OPINION
{¶ 1} Defendant-appellant, Clifford C. Reed, was indicted on one count of aggravated burglary, one count of kidnapping with a firearm specification, three counts of rape with firearm specifications and one count of gross sexual imposition. After a jury trial, appellant was found guilty of aggravated burglary, kidnapping, the three counts of rape and gross sexual imposition. The trial court conducted a hearing, pursuant to R.C. 2950.09(B), and determined that appellant is a sexual predator. The trial court imposed a sentence of three years each as to Counts One, Two and Six, the aggravated burglary, kidnapping and gross sexual imposition charges, and four years each as to Counts Three, Four and Five, the rape charges. Counts One, Two and Six are concurrent to each other and Counts Three, Four and Five are consecutive with each other and consecutive with Counts One, Two and Six.
 {¶ 2} Appellant filed a notice of appeal and raises the following assignments of error:
 {¶ 3} "Assignment of Error I
 {¶ 4} "Appellant was denied due process of law in that there is insufficient evidence to support the judgment of the trial court, and the judgment is against the manifest weight of the evidence.
 {¶ 5} "Assignment of Error II
 {¶ 6} "Plain error resulted, and appellant's due process protections were violated, upon introduction of prejudicial evidence.
 {¶ 7} "Assignment of Error III
 {¶ 8} "The court erred as a matter of law in sentencing appellant where the offenses constitute allied offenses.
 {¶ 9} "Assignment of Error IV
 {¶ 10} "Appellant's due process protections were violated, and the court erred in overruling defendant's motion for mistrial as a result of prosecutorial misconduct.
 {¶ 11} "Assignment of Error V
 {¶ 12} "The court erred, and appellant's due process protections were violated in classifying appellant as a sexual predator.
 {¶ 13} "Assignment of Error VI
 {¶ 14} "The court erred in permitting juror questions in violation of appellant's due process protections."
 {¶ 15} The charges arose out of events occurring on January 19 and 20, 2001. The first witnesses to testify were Columbus Police Officers Kleete and Thorpe. They were handling a traffic stop when a woman in a red pickup truck "screeched" the tires and slid off the side of the road into the irrigation ditch. Both officers described the woman as hysterical, crying and very upset. The woman told the officers that her name was Rhonda Hamilton and she was on her way to World Harvest Church to report to security that she had just been raped by her neighbor's brother. The officers sent other officers to the location in an attempt to apprehend the perpetrator and then Hamilton was taken to World Harvest Church to leave her car, then to identify appellant as the perpetrator and then to the hospital.
 {¶ 16} Hamilton testified that she was a member at World Harvest Church and also a Bible College student. She had complained several times about the noise from Billy Reed's apartment above her. Billy Reed is appellant's brother. She met appellant when he moved into his brother's apartment above her and appellant attempted to resolve her complaints regarding the noise. On the evening of January 19, 2001, Hamilton engaged in conversation with her neighbor Andre and appellant. Andre returned to his apartment. When Hamilton attempted to return to her apartment, appellant shoved his way in the door, pushed her to the floor and they struggled. He told Hamilton that he had a gun and a knife and if she did not cooperate, he would kill her. Appellant forced her into the bedroom and ordered her to undress and to masturbate. Then he inserted his finger into her vagina and performed oral sex on her on several occasions. He then ordered her to undress him. Hamilton testified that appellant tried to penetrate her with his penis on several occasions but he was too large. Appellant never achieved complete penetration with his penis because he would start and it would hurt, so he would stop and rub himself on her vagina. He inserted the tip of his penis into her vagina. Eventually, Hamilton gave appellant the keys to her second vehicle, a Subaru, and told him she was selling it in an effort to get him to leave her apartment. After he left, she got dressed and waited approximately one hour. When she went outside, appellant was not outside but soon joined her at the Subaru. After attempting to start it, appellant went back to his brother's apartment and Hamilton left in her Toyota pickup truck to go to World Harvest Church to report the incident to security there since she knew them. When she saw the police officers conducting the traffic stop, she stopped to request help.
 {¶ 17} A videotape of the interview of appellant conducted by the police was played to the jury. In the videotape, appellant stated that he offered to look at Hamilton's Subaru to get it started and that he was interested in buying it. Hamilton gave him the keys to look at the car in the morning. Then Hamilton invited him inside her apartment for a cup of tea. He told the police detective that he sat on the couch by the door, drank his tea and talked. He was in the apartment approximately 25 minutes and then left. Then he went to bed and awoke when the police knocked on the door.
 {¶ 18} The Sexual Assault Nurse Examiner ("SANE") at Grant Medical Center, who examined Hamilton, testified that her injuries were consistent with the description of the events that Hamilton told him.
 {¶ 19} There were several stipulations entered into the record, including that, if a DNA expert from the Columbus crime laboratory testified, she would have testified that the DNA from the semen found on the slides and swabs taken from Hamilton that evening at the hospital matched the DNA types obtained from the blood standard of appellant.
 {¶ 20} By the first assignment of error, appellant contends that he was denied due process of law because there is insufficient evidence to support the judgment and the judgment is against the manifest weight of the evidence. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 21} The test for determining whether a conviction is against the manifest weight of the evidence differs somewhat from the test as to whether there is sufficient evidence to support the conviction. With respect to manifest weight, the evidence is not construed most strongly in favor of the prosecution, but the court engages in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. See State v. Conley (1993), Franklin App. No. 93AP-387.
 {¶ 22} "* * * Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's [Law Dictionary (6th Ed. 1990)] at 1594)." Thompkins, at 387.
 {¶ 23} Appellant contends that the evidence is insufficient to prove rape, but only proves attempted rape. A conviction for rape requires proof of sexual conduct. R.C. 2907.01(A) defines "sexual conduct" as follows:
 {¶ 24} "* * * [V]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 25} Appellant argues that the evidence provides that Hamilton acknowledged a lack of penetration or only one successful penetration rather than two penetrations, one for each of Counts Four and Five. However, the definition of sexual conduct provides that penetration, however slight, is sufficient to prove this element of the offense. See R.C. 2907.01(A). Hamilton testified that appellant inserted his finger into her vagina and performed fellatio on her on several occasions. He also tried to penetrate her with his penis on several occasions but he was too large. Hamilton also stated that appellant inserted the tip of his penis into her vagina. Thus, Hamilton testified that appellant had inserted both his finger and the tip of his penis into her vagina. This testimony is sufficient for evidence of vaginal intercourse and vaginal penetration as alleged in Counts Four and Five.
 {¶ 26} Appellant also argues that there was insufficient evidence provided that Hamilton was not appellant's spouse. The indictment alleged that appellant was not Hamilton's spouse. While not specifically asked whether appellant and she were married, Hamilton testified that appellant was her neighbor's brother and she had talked to him on only a few occasions. In the videotape of his interview, appellant stated that they had only talked a few times. Before Hamilton complained to the police about the noise, appellant stated he did not know who she was. Based upon this evidence, it is not unreasonable for the jurors to determine that appellant and Hamilton were not married. Appellant's first assignment of error is not well-taken.
 {¶ 27} By the second assignment of error, appellant contends that plain error occurred and his due process protections were violated upon the introduction of prejudicial evidence. Appellant argues that the following portion of the videotape of his interview with the police detective should have been redacted and was not.
 {¶ 28} "[Police detective] Do you understand, see the kid crying, I'm gathering some information. What I am going to do, you have been here before. I want to read you your constitutional rights. Then I'm going to ask you your side of the story." (Tr. Vol. III, at 174.)
 {¶ 29} After the videotape was played to the jury, counsel and the trial court conferred and all admitted that it was a mistake not to redact that portion, but defense counsel refused the trial court's offer to instruct the jury. The prosecutor stated that he did not even notice the reference. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 30} The decision to decline the jury instruction was part of trial strategy. Apparently, defense counsel believed that, if the prosecutor failed to hear the comment, the jury may have also failed to hear it and an instruction would only call attention to it. The detective's statement was redacted before the tape was sent to the jury, so, at best, the jury heard the statement one time. Such trial strategy decisions are not plain error. State v. Clayton (1980), 62 Ohio St.2d 45,47-48. Appellant's second assignment of error is not well-taken.
 {¶ 31} By the third assignment of error, appellant contends that the trial court erred as a matter of law in sentencing appellant where the offenses constitute allied offenses. Appellant argues that he should only have been sentenced for one of the crimes because the alleged burglary was committed for the purpose of committing the rape and in committing the rape, he allegedly committed kidnapping and gross sexual imposition.
 {¶ 32} R.C. 2941.25, Ohio's allied offense statute, protects against multiple punishments for the same criminal conduct which could violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. R.C. 2941.25 provides, as follows:
 {¶ 33} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 34} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where this conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 35} In State v. Rance (1999), 85 Ohio St.3d 632, 638, the Supreme Court of Ohio clarified the R.C. 2941.25(A) analysis and determined that the statutorily defined elements of offenses are compared in the abstract to determine if they correspond to such a degree that the commission of one crime will result in the commission of the other crime. If the elements so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with a separate animus.
 {¶ 36} The trial court sentenced appellant to three years for each offense of aggravated burglary, kidnapping and gross sexual imposition and set the sentences of incarceration for those offenses to run concurrently. The remaining offenses in this case are not allied offenses. "Offenses involving distinct sexual activity each constitute a separate crime with a separate animus and do not constitute allied offenses of similar import." State v. Washington (Apr. 30, 2002), Franklin App. No. 01AP-727, at ¶ 12, citing State v. Nicholas (1993), 66 Ohio St.3d 431, 434-435. In this case, appellant committed three distinct sexual acts when he inserted both his finger and the tip of his penis into Hamilton's vagina and performed fellatio on her on several occasions. Appellant's third assignment of error is not well-taken.
 {¶ 37} By the fourth assignment of error, appellant contends that appellant's due process protections were violated, and the court erred in overruling his motion for mistrial as a result of prosecutorial misconduct. The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. In State v. Keenan (1993), 66 Ohio St.3d 402,406, the Supreme Court of Ohio set forth the standard for evaluating a claim of prosecutorial misconduct, as follows:
 {¶ 38} "* * * The prosecutor carries into court the prestige of `the representative * * * of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest * * * is not that it shall win a case, but that justice shall be done. * * * Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.' Berger v. United States (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 633,79 L.Ed. 1314, 1321."
 {¶ 39} Appellant contends that the prosecutor made several remarks during closing argument which were improper; however, most of the remarks that appellant now contends was error, were not objected to at trial. Appellant based the motion for mistrial on several instances in the prosecutor's closing argument, including the following:
 {¶ 40} "Rape is unlike any other crime, in the fact that if you don't like your first choice of defenses, that I didn't do it, you have a fall-back; that is, that the victim consented." (Tr. Vol. IV, at 317.)
 {¶ 41} "Is that not evidence beyond a reasonable doubt? Now, what motivation would Rhonda Hamilton have to lie to you?
 {¶ 42} "We'd submit to you that Rhonda Hamilton was blatantly honest with you when she told you about the incidents that occurred on January 19, 2001." (Tr. Vol. IV, at 278.)
 {¶ 43} "She can't be believed because she didn't fight and suffer injuries. Is it any wonder why so many rapes go unreported?
 {¶ 44} "Who is on trial? The defendant, Clifford Reed." (Tr. Vol. IV, at 315.)
 {¶ 45} "We can't show you Miss Hamilton without her dignity. It doesn't come conveniently packaged in an evidence box." (Tr. Vol. IV, at 316.)
 {¶ 46} Prosecutors are given considerable latitude during closing arguments. State v. Mauer (1984), 15 Ohio St.3d 239, 269, certiorari denied (1985), 472 U.S. 1012. A prosecutor may respond to attacks on a rape victim's credibility. State v. Price (1979), 60 Ohio St.2d 136. Also, the trial court instructed the jury to disregard the comment regarding why so many rapes are unreported, and also instructed the jury regarding who was on trial and whether consensual sex was a fall-back defense. The jury is presumed to follow instructions given by the court. Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph four of the syllabus. The comments complained of did not deprive appellant of a fair trial. Appellant's fourth assignment of error is not well-taken.
 {¶ 47} By the fifth assignment of error, appellant contends that the trial court erred, and appellant's due process protections were violated in classifying appellant as a sexual predator. Initially, appellant argues that the pre-sentence investigation report is not part of the record but it was filed as part of the record, although under seal. Appellant also argues that the pre-sentence investigation report is insufficient to prove that appellant is a sexual predator.
 {¶ 48} In State v. Cook (1998), 83 Ohio St.3d 404, 425, the Supreme Court of Ohio established that the rules of evidence do not strictly apply at sexual predator hearings and a trial court may consider reliable hearsay such as pre-sentence investigation reports when making such determinations. The trial court conducted a hearing and appellant was afforded the opportunity to present evidence, and the trial court's consideration of the documents did not deny appellant his due process rights. See, also, State v. Black, Butler App. No. CA2002-04-082, 2003-Ohio-2115.
 {¶ 49} "Sexual predator" is defined in R.C. 2950.01(E) as:
 {¶ 50} "* * * [A] person to whom either of the following applies:
 {¶ 51} "(1) The person has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."
 {¶ 52} R.C. 2950.09(B)(4) requires clear and convincing evidence in the record before a trial court may find that a defendant is a sexual predator. Clear and convincing evidence is "`that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" State v. Schiebel (1990), 55 Ohio St.3d 71, 74, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. The trial court must also consider the factors in R.C.2950.09(B)(3)(a) through (j) to determine whether a person is likely to commit another sexually-oriented offense in the future.
 {¶ 53} In this case, the trial court considered the factors provided in R.C. 2950.09(B)(3)(a) through (j), and the pre-sentence investigation report. The trial court determined that appellant had ten prior convictions, two of which involved sexually-oriented offenses, appellant did not have a good institutional adjustment, had threatened corrections officers while incarcerated and appellant did not complete the STOP program. The trial court found that appellant is more likely than not to re-offend or commit a sexually-oriented offense in the future. This evidence is evidence which appellant's counsel admitted during the hearing. We do not find that the trial court erred in relying on the portions of the pre-sentence investigation report to which appellant's counsel admitted were accurate. Given that evidence, the evidence is clear and convincing that appellant should be classified as a sexual predator. Appellant's fifth assignment of error is not well-taken.
 {¶ 54} By the sixth assignment of error, appellant contends that the court erred in permitting juror questions in violation of appellant's due process protections. In this case, the trial court permitted the jurors to submit questions in writing which were then reviewed by the judge and counsel to determine if the questions were appropriate. Appellant argues that permitting a juror to submit questions is inherently prejudicial.
 {¶ 55} This court has addressed this issue in State v. Fisher (Dec. 20, 2001), Franklin App. No. 01AP-614, in which we determined that, in the absence of demonstration that the trial court abused its discretion and the defendant was prejudiced, it is not error.[1]
Appellant has not demonstrated prejudice in this case. Appellant's sixth assignment of error is not well-taken.
 {¶ 56} For the foregoing reasons, appellant's six assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution
[1] This issue is pending before the Ohio Supreme Court in State v. Fisher, S.Ct. No. 02-201, but no decision has been rendered.